THE ORANGE BELT RAILWAY COMPANY, APPELLANT,
VS. JAMES C. CRAVER, APPELLEE.

1. In proceedings to condemn land for right-of-way of a railroad or canal company, all parties thereto are entitled to have the intelligent judgment of the entire jury upon the assessment of damages to be allowed; and should it appear that the jury reached a verdict by an agreement in advance that each one should set down the sum to which he considered the land owner entitled, that the aggregate of these sums should be divided by the number of the jury, and the quotient thus obtained should be the amount of the verdict, it will be set aside. But where it appears that the average of the estimates of the jurors was obtained by adding up the amounts and dividing

Orange Belt Ry. Co. v. James C. Craver.—Syllabus.

the result by the number of the jury, and afterwards the average thus obtained was objected to by some of the jury, and upon further consideration another sum was agreed upon as a verdict, the verdict will not be set aside.

2. It is proper for the jury in fixing the amount of compensation to be allowed the land owner in condemnation proceedings, to estimate not only the value of the land actually taken for right-of-way, but also the damage done to the remaining portion of the tract resulting from the construction of the road.

3. The inquiry before the Circuit Court on a protest against the report of a jury in condemnation proceedings is not in the nature of an original proceeding to fix the amount of compensation to be allowed the land owner, but is an investigation into the validity and regularity of the proceedings by the jury in fixing the compensation to be awarded ; and upon such a hearing the party objecting to the report has the right to produce evidence tending to show good grounds for setting aside the report, and if the court should deny this right it would be error.

4. Should the trial court improperly exclude a question propounded to a witness, and it appears that subsequently during the same examination the witness answers the question excluded, and he is examined in reference to the matter which the question excluded tended to elicit, error can not be predicated upon the ruling of the court excluding the question.

5. Witnesses who reside near the land in question and are familiar with its value, as well as the value of other lands in the neighborhood, can testify as to the value of the land taken for right-of-way. Such knowledge is sufficient to authorize them to give their estimates as to the value of the land taken.

6. Good cause must be shown before a report of a jury in condemnation proceedings will be set aside ; and in the absence of such showing the presumption is in favor of the report and that the jury discharged their duty. The jury in such proceedings exercise, however, important functions and pass upon valuable rights of property, and upon proper showing their award may be impeached for misconduct on their part, or where they have acted upon a wrong basis, or for partiality, bias, prejudice, or inattention, or unfaithfulness in the discharge of their duties, or for error of such character as to furnish a just inference of the existence of such influences.

Appeal from the Circuit Court for Hillsborough county.

The facts in the case are stated in the opinion of the court.

*Thomas E. Wilson* for Appellant.

*Barron Phillips* for Appellee.

MABRY, J.:

A petition was filed on the 9th day of January, A. D. 1888, in the office of the clerk of the Circuit Court for Hillsborough county by the appellant, a railway company, for the condemnation of a certain parcel of land situated in said county for a right-of-way for said company. No question is presented as to the sufficiency of this petition. It alleges the facts required by the statute in such proceedings, and contains a description of the land proposed to be condemned, over which the company had located its road, accompanied with a map showing where the road would run over the land when constructed, and the quantity of land to be taken. After the filing of the petition the circuit judge made an order directed to the sheriff of Hillsborough county, Florida, commanding him to summon twelve disinterested freeholders, registered voters of said county, as a jury to meet at a place designated in said order, near the land to be condemned, on a day mentioned, and to take steps after being sworn to appraise and value the lands described in the petition, and to fix the amount of compensation to be made to the owner. The sheriff obeyed this order by summoning twelve disinterested freeholders, registered voters of said county, who, after being sworn, met at the time and place mentioned in

the order and made an award which was filed in the clerk's office. The report recites that the jury reviewed the premises described in the petition, heard the allegations of the parties, and appraised and determined the value of each parcel of land proposed to be taken, with the value of the improvements thereon, and each separate estate therein, and the damages to which the owner was entitled. The conclusion of the report is: "We determine the value of the parcel of land described in said petition to be five hundred (500) dollars; that the value of the improvements thereon is nothing; that there is no estate in the said land other than that of the defendant; that the damages that will be sustained by the owner by reason of the taking of the land are five hundred (500) dollars, included in the above estimate, and that we fix the amount of the compensation to be made to the said owner at five hundred (500) dollars."

On the day the report was filed in the clerk's office, the company, by its attorney, filed a protest against the confirmation thereof, on the grounds that the amount awarded by the jury is excessive; that the valuation of the land taken, as shown by the report, is excessive, and not justified by any item of damage, and that the method adopted by the jury to arrive at the valuation made in their report was incorrect.

Three days after filing the foregoing protest, additional grounds of protest were filed as follows : That neither the report nor the petition shows the amount of land taken ; that there was inattention of such extraordinary character and grossness as to furnish a just inference of the existence of partiality and prejudice on the part of one of the jurors.

Upon a hearing and consideration of the protest, the court decided that no sufficient cause had been

shown why said report should not be confirmed, and the same was in all things affirmed. From this decision the company has appealed to this court.

We will dispose of the assignments of error insisted on here, and two of these are, that the principle upon which the award was made by the jury, and the method by which they arrived at the amount of the award were erroneous, and sufficient to cause the same to be set aside. The act of 1885, Chapter 3595, as amended by the act of 1887, Chapter 3712, on the subject of the condemnation of land for the right-of-way for any railroad or canal company, provides that in order to acquire such right-of-way the companies named shall file a petition in the office of the clerk of the Circuit Court of the county in which the land is situated, and shall therein allege certain matters specified in the statute. Upon the presentation of the petition the judge of the Circuit Court shall make an order directed to the sheriff to summon twelve disinterested freeholders, registered voters of the county, as a jury to meet at a time and place to be named in such order to appraise and value the land on oath, and to fix the amount of compensation to be made to the owners thereof. The jury so selected, at their first meeting, shall cause notice to be given to the owner or owners of the lands of the time when, and place where, they will meet to consider the amount of compensation to which the owner or owners of such lands shall be entitled. The statute prescribes the notice to be given, and the evidence of it to be stated in the report of the jury. It also prescribes that "the jury shall view the land described in the petition, hear the allegations of the parties, and shall appraise, ascertain and determine the value of each tract or parcel of land proposed to be taken, with the value of the

improvements thereon, and they shall fix the amount of the compensation to be made to each of the owners thereof." It further provides that a majority of the jury may determine all matters before them, and shall within ten days after viewing the land mentioned in the petition, file in the office of the clerk of the Circuit Court of the county a report of their proceedings concerning such lands, setting forth their verdict as to the amount of compensation awarded by them to the owner of each tract or parcel of land. Provision is then made for filing a protest by either party against the confirmation of said report. The party protesting must, "within ten days after the date of the filing of such report, file with the clerk of said court his or their written protest against the confirmation of such report, setting forth the reasons why the same should not be confirmed, and it shall be the duty of the said judge to hear the parties and their witnesses, and determine the matter at as early a day as practicable. Should the protesting party on such hearing show good cause why such report should not be confirmed, the judge shall refuse to confirm the same, and he shall order and cause to be taken such further proceedings in the matter not inconsistent with this act, as in his judgment, right and justice demand. Should said judge on such hearing determine that no sufficient cause has been shown why said report should not be confirmed, or should no protest be filed as hereinbefore provided, within ten days from the date of the filing of such report, the said judge shall make an order confirming said report," etc. Counsel for the company on the hearing of the protest called one of the jury of appraisement and proposed to prove by him the method employed by the jury in arriving at

3

their award, but the court ruled that the juror could not be allowed to impeach his verdict. A party who was present when the assessment was made was, however, permitted to testify to a conversation between the juror proposed to be examined and the counsel for the company immediately after the award agreed upon, in which conversation, it is testified, the juror stated each one put down the amount that he thought would be a fair value for the land, added them up, divided the result by twelve and gave the quotient as the result. Also that the juror stated he tried to get the jury to lower their verdict, and that he wanted to put it at two hundred or two hundred and fifty dollars. The juror was then recalled by counsel for the company and examined without objection so far as the record shows. He testified that each juror put down the amount he thought the owner was entitled to, these amounts were then added up, and the result divided by twelve to get the average, which would, as it came out, have been six hundred and twenty dollars. He also testified that he thought the amount was a little too much and came out on one side, seven other jurors following him. Some of them objected to the amount, but they could not help themselves and then agreed to it. The juror objecting then proposed that the amount be reduced and fixed at five hundred dollars, and seven jurors, being a majority, agreeing to this, ruled, and this was the way the amount of the award was reached. The report of the jury awarding the sum of five hundred dollars is signed by all of the jurors, and there is no contention that they did not all finally agree to this amount as their verdict. The objection urged here is that the principle by which the jury arrived at the sum of five hundred dollars was wrong. We entertain no doubt as to the right of

all parties to condemnation proceedings to have the intelligent judgment of the jury upon the assessment of damages to be allowed, and any agreement between them in advance which will leave the amount to be allowed as the result of chance will not be sustained. In Marquette, H. & O. R. R. Co. vs. Probate Judge, 53 Mich., 217, it is said: "There is no doubt, having regard to the constitution of different individuals' minds, that an agreement upon the amount is nearly always the result of compromise of opinion, and where there is no previous agreement to be bound by the result, there can be no objection to a subsequent adoption of such amount; if in view of all the evidence the commissioners become convinced that the amount thus determined is just and right. An agreement to be bound in advance is not the result of compromise or conviction, and affords designing persons on the commission the opportunity to mark an extravagantly high or low amount, so that the average will not yield a just average of the unbiased judgment of the persons composing the commission." The three commissioners in that case stated the respective amounts that they considered the owner entitled to, and then they agreed to add them up and divide the result by three and take the quotient as the award. It was said that there was nothing objectionable in this. The courts have generally set aside as improper a verdict where it appeared that the jury agreed in advance that each should set down the sum which he considered the plaintiff entitled, that the aggregate of these sums should be divided by the number of the jury, and the quotient thus obtained should without alteration stand as the verdict. But if, without any such agreement to abide by the result, the jury obtain in the way indicated the average of their opinions, and after delib-

eration adopt it as their verdict, it will not be set aside. Smith vs. Cheetham, 3 Cairnes, 57 ; Manix vs. Malony, 7 Iowa, 81 ; Denton vs. Lewis, 15 Iowa, 301 ; St. Martin vs. Desnoyer, 1 Minn., 156 ; Dorr vs. Fenno, 12 Pick., 521 ; Forbes vs. Howard, 4 R. I., 364 ; Thompson and Merriam on Juries, secs. 409, 410. Taking the statement of the juror himself as evidence of the method by which the jury reached the result in the case before us, there is enough to indicate that some of them had agreed to find a verdict by adding up the amount estimated by each one for the landowner, and dividing the result by twelve, but it is made to appear clearly that the amount reached by this method was not adopted by the jury as their verdict. Objection was made to this amount when ascertained, and a lesser sum was finally adopted. The average of all the amounts set down by each juror was $620, but after objection to this amount as being too much by a juror, upon further deliberation the sum of $500 was agreed upon and this sum was returned as the final award. Tested by the rule on this subject, the testimony does not, in our judgment, show such misconduct on the part of the jury in this respect as to render the ruling of the circuit judge thereon erroneous. Birchard vs. Booth, 4 Wis., 67. This result is based upon a concession that the evidence introduced on this point is admissible, and we have so considered it because no objection to it seems to have been insisted on at the time it was offered. The settled rule at the common law excluded a juror as a witness to impeach his verdict, though there is a departure from the rule in some decisions. *Vide* authorities *supra*. There are other decisions holding that a jury of appraisement or commissioners to assess damages in condemnation proceedings are not governed by the common law rule,

and that they are competent witnesses to testify to what transpired before them in making up their award. Canal Bank of Albany vs. Mayor of Albany, 9 Wendell, 344; Marquette, H & O. R. R. Co. vs. Probate Judge, *supra.*

It is further contended that the method employed by the jury in arriving at their award was wrong in this, that they not only took into consideration the value of the land taken for right-of-way, but also the damage done to the other portion of the tract by reason of the taking thereof. The point of contention here being that as the tract through which the right-of-way passes was wild land and no improvements upon it, the only element of compensation was the value of the land actually taken. The Constitution provides that the compensation to be made to the owner of the land proposed to be taken for right-of-way shall be ascertained by a jury of twelve men in a court of competent jurisdiction as prescribed by law, and which compensation shall be allowed irrespective of any benefits from any improvements proposed by the corporation. Constitution 1885, Art. XVI, sec. 29. The statute under which the proceedings in the present case were had provides that "the jury shall view the land described in the petition, hear the allegations of the parties, and shall appraise, ascertain and determine the value of each tract or parcel of land proposed to be taken, with the value of the improvements thereon, and each separate estate therein, and the damage that will be sustained by the owner or owners by reason of the taking thereof, and they shall fix the amount of the compensation to be made to each of the owners thereof." Act of 1887, Chapter 3712, sec. 3. The right-of-way sought to be acquired by the proceedings in the present case extends across

two forties of land owned by appellee, and at the hearing on the protest before the judge testimony was introduced tending to show that some of the jurors, in estimating the compensation to be allowed the owner, took into consideration the damage to the remainder of the land deemed by them to result from the construction of the road over the same. There is a conflict in the evidence on the protest as to the damage, if any, to the remaining portion of the land. The construction of the road necessitated a considerable cut over one portion of the land and an embankment over the other, and these were considered by some of the witnesses as sources of damage to the land not taken. The jury determined the tract of land described in the petition to be worth five hundred dollars, and the testimony indicates that this land was the part taken for right-of-way. The report states that "the damages that will be sustained by the owner by reason of the taking of the land are five hundred (500) dollars," but this amount was included in the above estimate of five hundred dollars which was fixed as the amount of compensation to be paid to the owner. It is not at all certain that the jury estimated damages to the remaining portion of the land in making their award, but conceding that they did, there would be no error in doing so, if damage was sustained by the owner by reason of the taking of the right-of-way. By the very language of the statute it is not only proper, but the duty of the jury in fixing the amount of compensation to estimate the damage that will be sustained by the owner by reason of the taking of the right-of-way, as well as the value of the land actually taken. This, of course, will include the damage to the remaining tract of the land from which the right-of-way is taken, resulting from the construc-

tion of the road. The result is, that there is no merit in the contention that the only element of compensation was the value of the land actually taken.

It is also assigned as error that the court "erred in confining the question of the value of the land taken to the time that the land was condemned, instead of allowing testimony to show its value at the time it was taken by the railway company." The petition for the condemnation of the land was filed January 9th, 1888, the report of the jury of appraisement was filed on the 24th of April following, and the hearing on the protest against its confirmation was had on the 30th of this month. The petition recites that the company had filed in the proper office its survey and map of its route, and proposed to construct its line of road across the land described in the petition, and that Craver (appellee here) was the owner and in possession of said land. At the time of the appraisement by the jury it seems the road-bed had been constructed over the land in question, but when this was done, and under what circumstances the company had assumed possession of the land for the purposes of constructing its road, does not appear. On the hearing of the protest the company introduced witnesses to show the value of the land taken by the company, and as to the damage to the owner by reason of the taking thereof. Counsel for the company propounded to one of its witnesses testifying on the protest before the judge the following question, viz. : "What lands similarly situated have been sold in the neighborhood since this tract was taken by the railroad?" This question was objected to by appellee's counsel, and the court ruled that the proper question was: "What was the value of land at the time that the land described was condemned?" The time when the land was condemned

has reference evidently to the time when the appraise-ment was made by the jury and the fixing of the com-pensation to be allowed to the owner. The company's counsel insists that the measure of compensation is the value of the land and damages at the time of entry, and not at the time of condemnation. There is authority for the position that where a railroad company has been permitted by the owner to enter in-to possession and construct its road without first pay-ing compensation therefor, in subsequent proceedings to condemn the land, the measure of compensation is the value of the land and damages at the time of en-try, with interest, irrespective of the value of the im-provements subsequently put upon it. North Hudson County R. R. Co. vs. Booraom, 28 N. J. (Eq.), 450. But it appears from the record before us that the com-pany had not taken possession of the land in question when condemnation proceedings were instituted, and at what time possession was taken is not shown. It is apparent that the difference in time between the taking possession of the land by the company, and the fixing of the compensation for the owner by the jury can not be much, but we are not informed as to this; nor do we know anything about the condition of values of land in the locality between the taking and the condemnation. The inquiry before the judge on a protest against the report is not an original proceed-ing to fix the amount of compensation to be allowed the owner of the land, but is an investigation into the validity and regularity of the proceedings by the jury in fixing the compensation to be awarded. The power of the court over the report is to confirm it, or, on good grounds shown, to reject it, and direct further proceedings in condemnation. On a hearing of a pro-test the party objecting has the right undoubtedly to

produce evidence tending to show good grounds for setting aside the report, and if the court were to deny this right it would be error. The evident purpose of the proposed testimony was to show that the award of the jury was so much larger than the real value of the land taken as to evince partiality, or want of due consideration in the premises, on the part of the jury. Under the grounds of objection to the report in the present case it was proper to offer evidence for this purpose. The attack, however, is on the report, and such testimony must relate to the matter, as it is this that is brought under review by the protest. The question objected to did not relate to the land in question, but to the sales of other lands in the neighborhood since the company took possession of the right-of-way. This was an indirect way of trying to reach the value of the land condemned. The question was broad enough to elicit testimony in reference to sales subsequent both to the entry by the company and the appraisement by the jury, and it is not made to appear that such testimony would have been relevant. It is made clear to us, however. by the record that the ruling of the court on the question referred to can not of itself have the effect to reverse the judgment, as it appears that not only the witness to whom the question was propounded, but other witnesses for the company did testify as to the sales of other lands made both prior and subsequent to the appraisement by the jury. The witness to whom the question objected to was propounded, afterwards went on and detailed all the sales of land in the neighborhood of which he had any knowledge, and upon this showing there can be no valid ground for reversal on account of the ruling assigned as error.

It is further assigned as error that the court erred in admitting the testimony of witnesses who were not experts, and had no knowledge of the matters upon which they were allowed to express an opinion. This objection relates to the competency of certain members of the jury introduced as witnesses by appellee on the hearing of the protest to testify to the value of the land taken for a right-of-way. These witnesses testified that they resided near the land and were familiar with its value and the value of the land in the neighborhood in which it was located. It is contended that in order to make such evidence admissible the witnesses must be shown to possess some special knowledge of the land in question. No other objection is raised as to their testimony. The exception in the record extends only to the testimony of the witnesses as to the value of appellee's land through which the right-of-way runs, and it is perfectly clear that they were competent to testify as to this. They lived near the land, were familiar with its location and value, as well as the value of other lands in the neighborhood. 2 Wood's Railway Law, sec. 263, and authorities cited in note; Lewis on Eminent Domain, section 435, and authorities cited in note.

It is also assigned as error that the court erred in not setting aside the award and ordering a new jury; and in "following the testimony of defendant's witnesses, all of whom were members of the jury that made the award, and none of whom were real estate men, instead of following the testimony of complainant's witnesses, neither of whom was on the jury, and both of whom were real estate men;" and in not "directing respondent to file a remittitur as to a portion of the award, and in not decreasing the award to a reasonable sum under the evidence." The foregoing

includes the assignment of error involving the suffi-
ciency of the evidence before the court to set aside
the report of the jury, and will be considered together.
On the protest the company examined two witnesses,
both of whom lived near the land in question, had
been engaged in the real estate business, and stated
that they were familiar with the value of the land in
question.   These witnesses say that in their opinion
the appellee was not damaged by reason of the con-
struction of the road over his land beyond the value
of the land taken for right-of-way.   One fixes the
value of the land taken for right-of-way at the highest
figure one hundred and five dollars, and the other at
one hundred and twenty dollars.   Appellee testified
for himself and introduced three other witnesses who
were on the jury of appraisement, but who lived near
the land and were familiar with its value.   Objection
was made to these witnesses testifying as to the value
of the land on the ground that they were not experts.
This objection we have already considered.   No other
objection was made to the admissibility of their testi-
mony.   One of these witnesses places the value of the
land taken at $250, and the damage done to the re-
mainder of the tract by reason of the construction of
the road at $150, making the total of his estimate at
$400.   Another witness places the value of the land
taken at $100 per acre, and the damage at $1,000, and
the third one estimates the good land taken at $100
per acre, and the damage to the tract at $1,000.   Ap-
pellee testified that the land taken was worth $100 per
acre, and the damage to the remainder at $500.   The
quantity of the land sought to be condemned as shown
by the petition is about six acres.   Upon substantially
such a showing did the Circuit Court err in refusing
to sustain the protest, and in confirming the report of

the jury? We do not think so. It is not to be for-gotten that jurors in condemnation proceedings exer-cise important functions and pass upon valuable rights of property. Their award, embodied in a report, is subject to review and may be impeached where mis-conduct in the jury is shown, or where they have acted upon a wrong basis; or, as stated by Mills on Eminent Domain, sec. 234, "for partiality, bias, prejudice or in-attention, or unfaithfulness in discharge of their trust, or for error of such extraordinary character or grossness as should furnish a just inference of the existence of such influences." The jury are required to view the land desired to be condemned, "hear the allegations of the parties, and shall appraise, ascer-tain and determine the value of each tract or parcel of land proposed to be taken, with the value of the im-provements thereon, and each separate estate therein, and the damage that will be sustained by the owner or owners by reason of the taking thereof, and they shall fix the amount of the compensation to be made to each of the owners thereof." In Missouri, under a statute similar to ours, except three commissioners as-sessed the damages, instead of a jury of twelve men, as in ours, it was said in the case of St. Louis & St. Joseph R. R. Co. vs. Richardson, 45 Mo., 466, "they (the commissioners) may arrive at their conclusions upon the proofs and allegations of the parties; and in addition thereto they are required to view the prem-ises, and have the advantage of actual personal in-spection. They are generally selected on account of their capacity and fitness, and are required to be dis-interested; and unless the court is clearly satisfied that they have erred in the principle upon which they have made appraisal, there is nothing for review, and their report should not be disturbed." In a later case,

Kansas City, St. Joseph & Council Bluffs R. R. Co. vs. Campbell, Nelson & Co., 62 Mo., 585, it was held that "ordinarily, where opinions as to the value of the land might well be variant, the reports of commissioners, appointed to assess the land condemned for a railroad, will not be closely scrutinized; but the court will interfere where the damages assessed are flagrantly excessive; where there are manifest indications of an entire lack of appreciation of the duties and responsibilities of their position, and an utter obliviousness of the rudimentary principles of fairness and impartiality." Under our statute good cause must be shown before the report will be set aside, and in the absence of such showing the presumption is in favor of the report, and that the jury have properly discharged their duty. Omaha & Republican Valley R. R. Co. vs. Walker, 17 Neb., 432; Chicago & Iowa R. R. Co. vs. Hopkins, 90 Ill., 316; Peoria & Farmington Ry. Co. vs. Barnum, 107 Ill., 160; Chicago & Evanston R. R. Co. vs. Jacobs, 110 Ill., 414. On the testimony in the record we can not hold that the circuit judge erred in refusing to set aside the report. The entire proceeding, we remark in conclusion, has been conducted by both sides on the idea that the jury was properly organized, and no question as to the constitutionality of the statute has been presented.

The judgment appealed from must be affirmed, and it is ordered accordingly.