69 So.2d 771 (1954)
MARKS et al.
v.
STATE ROAD DEPARTMENT.
Supreme Court of Florida. Division B.
January 5, 1954.
Rehearing Denied February 9, 1954.
Kenneth A. White, Pensacola, for A.J. Burks and Dollie Burks.
Coe & Coe, Pensacola, for Henry Handrop and Irene Handrop, his wife.
Ross H. Stanton, Jr., Tallahassee, for appellee.
DREW, Justice.
We have carefully considered the questions presented on appeal by all of the appellants. With the exception of the question relating to the proposition of whether the verdicts rendered in the lower court were quotient verdicts, we find no merit in any of them.
The matter being considered by the court and jury below was the condemnation of land for rights of way for a State Road. Many defendants and numerous parcels of land were involved.
*772 The jury returned verdicts for the various parcels of land in odd figures. As an example, for parcel 241 the value was fixed at $1,999.03; for parcel 68, $2,681.66; for parcel 254, $1,948.33. When the verdict was delivered to the Clerk in open court and read by him, the presiding Judge, realizing from the odd figures used in the verdict that it might be a quotient verdict, examined the jury then and there (before their discharge) on the subject. The following events transpired:
"The Court: (upon completion of reading of verdicts) Gentlemen, these were not by chance the aggregate of the Jury divided by twelve?
"Foreman of Jury: We arrived at a compromise verdict on them.
"The Court: Is that the way you arrived at it, by taking the actual juror's findings and dividing by twelve?
"Foreman of Jury: In a manner of speaking we did that. We discussed it and revised our figures and finally arrived at a compromise on each individual case.
"The Court: It was not a quotient verdict?
"Foreman of Jury: No, it was not a cold quotient verdict.
"The Court: Gentlemen, a verdict of this kind, or any kind, assessing damages, must be the individual verdict of each Juror, and must not be calculated by adding together the individual figures of each Juror and then dividing by twelve, because the verdict must be an unanimous verdict of each individual Juror, and with each of them concurring. With that admonition by the Court, I will read you the amount allowed for each parcel and I would like to have indicated by the Jury whether each of you is content with the amount allowed.
"Thereupon the Court read to the Jury as to each parcel the parcel number and the amount of compensation awarded.
"The Court: Mr. Kearn, is that your individual verdict in each case?
"Mr. Kearn: That is my individual verdict.
"The Court: Mr. Humphries, is that your individual verdict?
"Mr. Humphries: Yes, sir.
"Mr. White: I would like to request an individual poll on each parcel.
"Mr. Coe: With respect to Parcels No. 144 and 166, I ask for an individual poll.
"Mr. White: I ask for an individual poll as to Parcel 241(a) and (b).
"The Court: Mr. Page, is this your individual verdict as to each parcel?
"Mr. Page: Yes, sir.
"The Court: Are you content that that is the compensation to be awarded for each parcel?
"Mr. Page: Yes, sir.
"The Court: Mr. Lawson, is this your individual verdict and are you content that this amount be recorded as to each parcel?
"Mr. Lawson: Yes, sir.
"The Court: Mr. Nelson, is this your individual verdict as to each parcel, and are you content that these be recorded as the amounts awarded?
"Mr. Nelson: Yes, sir.
"The Court: Mr. Adcock, is this your individual verdict? You have heard read the amounts to the defendants separately and individually. Is it your verdict as to each parcel, and are you content that these be recorded as the amounts awarded?
"Mr. Adcock: Yes, sir.

*773 "The Court: Mr. McConnell, you have heard the reading of the amounts awarded to the defendants. Are you willing for that to be recorded as your verdict as the compensation to be allowed to the individual defendants involved?
"Mr. McConnell: Yes, sir.
"The Court: Mr. Fillingim, are these your individual verdicts? Are you willing for that to be recorded as to what you find to be the proper compensation to each of the defendants?
"Mr. Fillingim: Yes, sir.
"The Court: Mr. Armstrong, are these your individual verdicts? Are you willing for that to be recorded as to what you find to be the proper compensation to each of the defendants?
"Mr. Armstrong: Yes, sir.
"The Court: Mr. Conway, you have heard the reading of the amounts awarded to the defendants. Are you willing for that to be recorded as your verdict as the compensation to be allowed to the individual defendants involved?
"Mr. Conway: Yes, sir.
"The Court: Mr. Baldwin, you have heard the reading of the amounts awarded to the defendants. Are you willing for that to be recorded as your verdict as the compensation to be allowed to the individual defendants involved?
"Mr. Baldwin: Yes, sir.
"The Court: If any one of you is not content with any individual parcel, make it known now. If there has been averaging you must acknowledge that, that you have done it. If there is anything that you have not been content with, and if you feel that any defendant has not been properly compensated, let the Court know. I gather that you are all content and this is your verdict as to each parcel, the just compensation to each of the parties involved. The verdicts will be filed."
Quotient verdicts are universally condemned. To constitute a quotient verdict, however, it is essential that there be a preliminary agreement or understanding among the jurors that each will select a figure as representing his opinion of value or damage and that the sum of said amounts divided by the number of jurors will be accepted by each as his or her verdict, and is in fact so accepted. It requires no citation of authority or long dissertation to establish the invalidity of such a verdict or the mischief that would result from a recognition of it. Such verdict would not represent the independent opinion of each juror as the law requires. On the other hand, the courts recognize that compromise, discussions and deliberations are necessary for the determination of questions where minds differ. The use of such figures solely for the purpose of discussion and deliberation is not improper. Orange Belt Ry. Co. v. Craver, 32 Fla. 28, 13 So. 444.
Attached to the motion for new trial in this cause was an affidavit of the juror Humphries reading as follows:
"State of Florida
"County of Escambia:
"Before the undersigned authority this day personally appeared Charles D. Humphreys, who being first duly sworn on oath says that he was one of the jurors of the jury who sat in the Circuit Court of Escambia County, Florida, on the week of December 3rd to 5th, 1951, and thereafter and who adjudicated the condemnation case of State Road Department of Florida against Howell Williams and Bertha I. Williams, and Henry Handrop and Irene Handrop, and others, and that in arriving at their verdict in the case of each of the above defendants, the jurors agreed together that each would write down a figure which he thought proper as compensation for each of the said Defendant's parcels of property, and without communicating the said amounts to one *774 another, would submit such figure to their foreman, who would add up the respective figures given on each parcel, divide the same by 12, and the resulting figures would be embodied in and become the verdict and finding of the jury. That such action was taken and such figures arrived at as to each of the said parcels, and without other or further deliberation, the result was written down and rendered as their verdict."
Appellants argue that it was error for the lower court to refuse consideration of the evidence of the juror in the determination of the motion for new trial. They say that such evidence is clearly admissible to establish the fact that the verdict was a quotient verdict under the authority of Orange Belt Ry. Co. v. Craver, supra, and quote extensively from that case. That case is not authority for the proposition that a juror may testify for the purpose of impeaching his verdict or that his affidavit is admissible for that purpose. It is true that the juror in that case  after first being denied the right to testify  was allowed to do so  without objection  when he was recalled. The case was disposed of by this Court with the specific observation that "we have so considered it [the testimony of the juror] because no objection to it seems to have been insisted on at the time it was offered."
The question of the admissibility of affidavits or evidence of jurors to impeach their verdicts has been a most troublesome one. Professor Wigmore, in his eminent work on Evidence, Vol. VIII (3rd Ed.), pages 684-685, observed:
"* * * Up to Lord Mansfield's time, and within half a decade of his decision in Vaise v. Delaval, the unquestioned practice had been to receive jurors' testimony or affidavits without scruple. There were of course variances of ruling as to the sufficiency of this or that misconduct to invalidate a verdict; but the proof of it was received equally from jurors and others, without discrimination. If corroboration were needed, it is found in the early American practice, where many rulings were made upon the jurors' affidavits of misconduct. But Vaise v. Delaval, with the prestige of the great Chief Justice, soon prevailed in England, and its authority came to receive in the United States an adherence almost unquestioned."
See also Wigmore on Evidence, Vol. VIII (3rd Ed.), pages 664-712, for the further history and development of the law on this question.
A better rule, according to Wigmore, is outlined by Justice Brewer in Perry v. Bailey, 12 Kan. 539, 544, which is quoted extensively and approved by this Court in City of Miami v. Bopp, 117 Fla. 532, 158 So. 89, 97 A.L.R. 1035.
The Supreme Court of Iowa laid down what is conceived to be the true rule in the case of Wright v. Illinois & Mississippi Telegraph Co., 20 Iowa 195, 210. In view of the full discussion of the subject and what we hold to be the sound conclusion reached here, we quote from the opinion:
"While we do not feel entirely confident of its correctness, nor state it without considerable hesitation, yet we are not without that assurance, which, under the circumstances, justifies us in laying down the following as the true rule: That affidavits of jurors may be received for the purpose of avoiding a verdict, to show any matter occurring during the trial or in the jury room, which does not essentially inhere in the verdict itself, as that a juror was improperly approached by a party, his agent, or attorney; that witnesses or others conversed as to the facts or merits of the cause, out of court and in the presence of jurors; that the verdict was determined by aggregation and average or by lot, or game of chance or other artifice or improper manner; but that such affidavit to avoid the verdict may not be received to show any matter which does essentially inhere in the verdict itself, as that the juror did not assent to the verdict; that he misunderstood *775 the instructions of the Court; the statements of the witnesses or the pleadings in the case; that he was unduly influenced by the statements or otherwise of his fellow-jurors, or mistaken in his calculations or judgment, or other matter resting alone in the juror's breast.
"That the verdict was obtained by lot, for instance, is a fact independent of the verdict itself, and which is not necessarily involved in it. While every verdict necessarily involves the pleadings, the evidence, the instructions, the deliberation, conversations, debates and judgments of the jurors themselves; and the effect or influence of any of these upon the juror's mind, must rest in his own breast, and he is and ought to be concluded thereon by his solemn assent to and rendition of the verdict (veredictum  a true declaration). To allow a juror to make affidavit against the conclusiveness of the verdict by reason of and as to the effect and influence of any of these matters upon his mind, which in their very nature are, though untrue, incapable of disproof, would be practically to open the jury room to the importunities and appliances of parties and their attorneys, and, of course, thereby to unsettle verdicts and destroy their sanctity and conclusiveness.
"But to receive the affidavit of a juror as to the independent fact that the verdict was obtained by lot, or game of chance or the like, is to receive his testimony as to a fact, which, if not true, can be readily and certainly disproved by his fellow jurors; and to hear such proof would have a tendency to diminish such practices and to purify the jury-room, by rendering such improprieties capable and probable of exposure, and consequently deterring jurors from resorting to them. * * *
"While it is certainly illegal and reprehensible in a juror, to resort to lot or the like to determine a verdict, which ought always to be the result of a deliberate judgment, yet such resort might not evince more turpitude tending to the discredit of his statement than would be evinced by a person not of the jury, in the espionage indicated by Lord Mansfield and necessary to gain a knowledge of the facts to enable him to make the affidavit. At all events the superior opportunities of knowledge and less liability to mistake which the juror has over the spy, would entitle his statement to the most credit. And if, as is universally conceded, it is the fact of improper practice, which avoids the verdict, there is no reason why a Court should close its ears to the evidence of it from one class of persons, while it will hear it from another class, which stands in no more enviable light and is certainly no more entitled to credit.
"Nor does the consideration of the affidavits of jurors for the purposes stated, contravene sound public policy. It is true, however, that public policy does require that when a juror has discharged his duty and rendered a verdict, such verdict should remain undisturbed and unaffected by any subsequent change of opinion upon any fact or pretext whatever; and, therefore, a juror should not be heard to contradict or impeach that which, in the legitimate discharge of his duty, he has solemnly asseverated. But when he has done an act entirely independent and outside of his duty and in violation of it and the law, there can be no sound public policy which should prevent a court from hearing the best evidence of which the matter is susceptible, in order to administer justice to the party whose rights have been prejudiced by such unlawful act. In other words, public policy protects a juror in the legitimate discharge of his duty, and sanctifies the result attained thereby; but if he steps aside from his duty, and does an unlawful act, he is a competent witness to prove such fact, and thereby prevent *776 the sanction of the law from attaching to that which would otherwise be colorably lawful." (Emphasis supplied).
Whether the lower court erred in refusing to entertain the evidence of the juror, it seems to us, is not really an issue at all. In the first place, we are completely satisfied from the record before us that the verdict was not a quotient verdict. What a quotient verdict consists of was fully and completely explained to the jury when they turned in their verdict, while they were yet in the court room and a part of the machinery for the administration of justice. Each juror separately affirmed as such juror, in the presence of the Court and counsel then assembled, that it was his verdict, constituted his considered judgment and was not a quotient verdict. If any party to the cause was yet in doubt he should have then and there pursued the matter further. All of the jury was there and every opportunity was presented to determine the facts at that time. When, before a jury is discharged or its verdict accepted and ordered recorded, a question is raised concerning any matter occurring during the trial or in the jury room which does not essentially inhere in the verdict itself, and proper inquiry is then conducted by the trial Judge or under his direction on such question, and determined by him, the same matter may not thereafter be raised by affidavit or otherwise. Any other rule would result in unnecessarily harassing jurors and hampering the effectual administration of justice. Moreover, we can imagine no better time and place to decide the question with the greatest accuracy than at a time when all events are fresh in the minds of the jury and all interested parties are present. See Wigmore on Evidence, Vol. VIII (3rd Ed.) 678, Section 2350.
Affirmed.
ROBERTS, C.J., and THOMAS and HOBSON, JJ., concur.