WALDEN, Judge
(dissenting).
I agree with the majority opinion that this was not the classic quotient verdict situation, if it be true that there was no agreement by the jury to be bound by the average reached. And if that was all there was, I could readily agree that the trial judge erred in granting a new trial. But there is more — much more — in the way of condemning circumstances which lead this writer to conclude that the verdict was attended by such irregularity as to constitute a gross departure from the essentials of law. The combination is of such magnitude as to command a new trial as a matter of simple justice.
Please remember:
(1) The verdict was, in fact, reached by the quotient method. The jurors wrote down their individual views as to the amount of damages. The individual sums were totalled and divided by the number of jurors. The quotient reached was adopted as the amount of the verdict, subject to the adjustment outlined below.
(2) The jury improperly awarded plaintiff the sum of $1500 as attorney fees and this sum was added to the quotient mentioned above, with the total being reported to the court as the jury’s verdict.
(3) After the average was struck and the attorney fees tacked on there was no further discussion or deliberation as to liability, injuries or damages.
(4) This was a complicated two-day trial, with substantial damages claimed. The trial was conducted on December 30 and 31, 1968, with the jury retiring to reach its verdict on New Years Eve. The jury deliberated only forty-five minutes in toto. This time was broken down with the first fifteen to twenty minutes being used in the selection of a foreman and the averaging procedure which produced the quotient verdict. The jury then took a coffee break of ten to fifteen minutes. They then returned and discussed the award of attorney fees for fifteen minutes. Thus the true deliberation antecedent to the award of proper damages was only fifteen to twenty minutes and this was largely consumed by the mechanics of averaging the individual views of the several jurors. As the foreman stated, “But it being New Years Eve, we all wanted to get out, it was a fast meeting of the minds.”
Here the trial court in the exercise of its discretion and having been present on the ground, decided to grant a new trial. This is a weighty decision and should not be lightly overturned, as it operates to afford each of the parties a new opportunity to have the dispute resolved in accordance with law. This is to be contrasted with an order denying a new trial where the rights of the parties are finally determined. The presumption that the trial court acted properly in granting the motion requires no citation. It is entitled to great weight by this court and should not be lightly overturned. This is particularly true when the issue revolves around possible quotient verdict procedures. In Pix Shoes of Miami, Inc. v. Howarth, Fla.App.1967, 201 So.2d 80, the court said:
“The courts of this State have been reluctant to reverse a trial judge when he has granted a new trial on this ground [see: Malone v. Marks Brothers Paving Co., supra], and have been reluctant to reverse a trial judge when he has denied a new trial on this ground. See: Marks v. State Road Department, supra.
“The appellant urges that this court’s opinion in Malone v. Marks Brothers *215 Paving Co., supra, requires a reversal of the trial court’s order. We do not agree. In the case of Malone v. Marks Brothers Paving Co., supra, this court affirmed a trial judge’s granting a motion for new trial on the ground the order there under review was not only entitled to a presumption of correctness, but under the applicable principles of law it takes a stronger showing of error in order to reverse an order granting a new trial than one denying same. See: Cloud v. Fallis, Fla. 1959, 110 So.2d 669; Archibald v. Wittmer, Fla.App.1960, 120 So.2d 236; Simpson v. Clay, Fla.App.1962, 139 So.2d 494.”
Here the only evidence as to the jury’s behaviour, beyond the circumstances inherent in the piece of paper found by the judge, is the testimony of the foreman taken about one week subsequent to the rendition of the verdict. This is to be contrasted with the facts in Marks v. State Road Department, Fla.1954, 69 So.2d 771, mentioned by the majority. In the Marks case, supra, it was recorded,
“In the first place, we are completely satisfied from the record before us that the verdict was not a quotient verdict. What a quotient verdict consists of was fully and completely explained to the jury when they turned in their verdict, while they were yet in the court room and a part of the machinery for the administration of justice. Each juror separately affirmed as such juror, in the presence of the Court and counsel then assembled, that it was his verdict, constituted his considered judgment and was not a quotient verdict. If any party to the cause was yet in doubt he should have then and there pursued the matter further. All of the jury was there and every opportunity was presented to determine the facts at that time.”
Thus, the court in the Marks case was left with no alternative but to find as a matter of fact that it was not a quotient verdict. This is easily contrasted with the instant case. When this single witness’ testimony is analyzed in light of the facts above outlined in Nos. 1, 2, 3, and 4, it is my view, that despite the disavowal of the foreman, the conduct and actions of the jury were tantamount to an implied agreement or tacit understanding on the part of the jury to be bound by the quotient in question.
In Ledbetter v. State, 1920, 17 Ala.App. 417, 85 So. 581, it was shown that the verdict was reached by averaging and that two of the jurors formally denied that any agreement was made that the quotient reached would be their verdict. The court there held, “ * * * but enough is clearly disclosed from their own testimony and the other facts in the case to convince us that this was the manner, way, and at least implied agreement whereby the fine was determined upon in this case.” It was further said,
“A full consideration of all of the testimony shows that by their acts the jury did agree in advance to a quotient verdict, and that this agreement was carried out. Men may proclaim with their lips that they did or did not agree to do certain things, and yet, when their actions in the premises are looked to, what they said and did is considered in the light of common sense and reason, a very different result is arrived at; and to say that the verdict in this case was not reached in such a manner as to make it a quotient verdict, considering all that was said and done, requires too great a draft upon human credulity. We are of the opinion that the verdict was not a true verdict, and should have been set aside.”
See also Sylvester v. Town of Casey, 1900, 110 Iowa 256, 81 N.W. 455; Becker v. Mollenauer, Tex.Civ.App., 1950, 234 S.W.2d 690. See Park v. Belford Trucking Co., Fla.App.1964, 165 So.2d 819, as concerns the significance to be accorded the short length of time that a jury deliberated in reaching its verdict and its suggestion that *216 same may be considered at least as some evidence of impropriety.
There are three Florida cases which shed light upon the subject, namely: Malone v. Marks Brothers Paving Co., Fla.App.1964, 168 So.2d 753; Jackson Grain Co. v. Hoskins, Fla.1954, 75 So.2d 306; Marks v. State Road Department, Fla.1954, 69 So.2d 771. In the Marks case, supra, quotient verdicts were condemned and the requirements that there be a prior agreement to be bound imposed. However, the effect of other irregularities and improprieties was not plumbed and it is clear from the quote earlier set forth that it was manifest that the verdict reached was not a quotient verdict based upon the affirmations of each and every juror at the rendition of the verdict and after being properly advised.
In the Jackson Grain case, supra,
“When the jurors retired to enter upon their deliberations they had been charged by the court so fairly and thoroughly that neither party now challenges the charges. Once they were in their room, a curious procedure was adopted. Each wrote on a slip the amount he thought the plaintiff should recover, that is, all did except one, and he recorded either 'no’ or ‘O’. The five figures were added and then divided, not by six, but by five. Even so an error of one hundred dollars was committed. To be exact the figures set down by the individual jurors were $15,000, $40,-000, $50,000, $75,000, and $87,000, while one juror wrote ‘no’. When added the sum was $267,000. This amount was divided by five — evidently the juror who recorded no amount was no longer taken into account — and the erroneous quotient of $53,500 was placed in the verdict.”
Further,
“It is only fair to say that each of the jurors filed an affidavit that he did not agree in advance that the quotient obtained by using the divisor ‘5’ would be the amount of the verdict. The one who never set down any amount signed a second affidavit ‘that after considerable discussion and consideration among themselves, the jurors agreed to award the plaintiff damages by agreeing to and adopting the following plan: That each of the jurors put on a piece of paper the amount he was willing to award in damages, and that these several amounts be added up and divided by the number of jurors for the purpose of ascertaining the average, and this average was to be accepted as the verdict.’ ” (Emphasis supplied.)
The court further observed,
“We are not disposed to retract the definition but it does not follow that because six of the jurors signed identical affidavits that there was a discussion among them as to the amount of the verdict after the addition and division had taken place, although one of them — the juror who offered no figure at all deposed a few days after the trial that there was an agreement before the computation was made that the quotient should constitute the verdict — that a true verdict was rendered. If we accept later affidavits and disregard the earlier affidavit of the one juror, the procedure would not fall strictly within the definition of ‘quotient verdict’ but it remains a significant circumstance to be considered in connection with the method of ‘aggregating’ and ‘averaging’ and the propriety of the process used.” (Emphasis supplied.)
The critical holding was expressed as follows :
“We are of the view that the irregular method of setting down figures, dividing them by five and reporting the result to the court a little more than an hour after retirement is not the approved way of arriving at a verdict, especially in a case that required four days to try, and involved a claim of over one hundred thirty thousand dollars, and that the irregularity was not cured simply because the juror who was conspicuously non-com- *217 mital and non-participant sat mute when the verdict was received by the court/
It seems clear that in this case, in the light of the further refinements found in the dissenting opinion, that the Supreme Court decided that although there was no agreement in advance to be bound that the irregularities were of such nature that a new trial should be accorded the parties.
It is acknowledged by the majority opinion its views are at variance with those expressed in the Malone case, which case was relied on by the trial court. In Malone there was no prior agreement to be bound and a new trial was approved where the facts were much less compelling than in the instant case. It was there stated,
“It is our view that the Jackson Grain case amply illustrates that not only is the so-called technical quotient verdict condemned, but any such irregular methods of arriving at a verdict as aggregating or averaging for the reason that such verdicts do not represent the independent opinion of each juror and this undermines and circumvents the deliberative process underlying the jury system. See also Magid v. Mozo, Fla.App.1962, 135 So.2d 772.”
A jury’s verdict should not be reached through a process of chance or gambling. It should be based upon discussion, deliberation, reasoning, and collective judgment, with each juryman participating equally, with the decision being made in the light of the evidence and the court’s charge as to the law. Where, as here, because of the press of time and the impending holiday and other considerations the jury departs from these standards and in fact decides the case by lot and chance, its result and verdict is patently wrong and should not be allowed to stand. I would approve the decision of the trial judge to grant these parties a new trial with a new jury that hopefully would decide the issues based upon the facts and law, and not otherwise.
I would affirm.