WIGGINTON, Judge.
Defendants have appealed a final judgment awarding damages to plaintiff for injuries sustained as a result of the negligent operation of defendants’ motor vehicle. Appellants contend that the trial court erred in denying their motion for a directed verdict made at the conclusion of the evidence as well as their motion for a new trial.
By his complaint plaintiff alleged that defendants so negligently operated their motor vehicle as to cause it to collide with the motor vehicle driven by plaintiff, resulting in severe injuries for which damages were claimed. Defendants interposed the defenses of general denial and contributory negligence.
The undisputed facts reveal that at about eleven o’clock in the nighttime appellant Ellison was operating a 54-foot-long trac *176 tor-trailer rig owned by appellant, Port Carriers, Inc., on a two-lane 22-foot-wide public road in Duval County. Appellant was proceeding northward and upon reaching a point where the road intersects a driveway into an industrial plant, appellant slowed his tractor to a speed of about five miles per hour and turned to the left and across the road preparatory to entering the driveway. Appellee was driving his motorcycle southward on the road without a headlight and, in an apparent attempt to avoid striking the vehicle driven by appellant, applied the brakes of his motorcycle causing it to skid a distance of approximately 105 feet before colliding with appellants’ vehicle. Appellant-driver testified that he did not see appellee as he approached from the north on his motorcycle and was not aware of his presence until he heard the noise caused by the impact of the motorcycle against the wheel of the tractor. As a result of the collision, appel-lee was severely injured.
It is appellants’ position that the proof fails to establish any negligence on their part and that their motor vehicle was being operated in a careful, prudent, and lawful manner as it approached the driveway into which it attempted to turn. Appellants urge that, since appellee was operating his motorcycle without a headlight or other illumination as required by statute,[1] he was prima facie guilty of negligence which proximately contributed to his injuries and is therefore precluded from recovery.[2]
Appellee was so severely injured that at no time was he able to recall the facts immediately preceding the collision. The record is silent as to the speed appellee was traveling immediately prior to the accident, although some estimate of speed may be inferred from the length of skid marks caused by appellee’s motorcycle in his attempt to stop or avoid colliding with the tractor of appellants. The evidence construed in a light most favorable to ap-pellee indicates that the point where the road intersects the driveway leading into the industrial plant where the collision occurred was sufficiently lighted as to enable a person to see a distance of from 250 to 300 feet in each direction. The illumination at the intersection was created by the blinker caution light installed at that point together with lights from the adjacent parking lot leading into the plant and from the administration building located on the opposite side of the road. It is appellee’s position that even though he was presumptively negligent by operating his motorcycle in the nighttime without a proper headlight as required by law, such negligence was not the proximate cause of the collision. He argues that the intersection where appellant attempted to turn across the road in front of him was so well lighted that if appellant had been exercising due care and keeping a proper lookout ahead, he would have seen appellee approaching from the opposite direction in the southbound lane of the road even though no headlight was burning on his motorcycle. He urges that appellant was therefore negligent in turning in front of him under such circumstances that the collision could not be avoided. Appellee insists that whether he was guilty of contributory negligence to the extent of barring his recovery was a question properly submitted to and resolved by the jury and that to have granted appellants’ motion for a directed verdict would have constituted error. With this contention we are forced to agree.
If the area around the intersection where the accident occurred was as well illuminated as appellee’s witnesses testified it was, it fell within the province of the jury to decide whether appellant, in the exercise of reasonable care, did see or should have seen appellee approaching from the *177 north on his motorcycle and should therefore have refrained from turning left across the road in front of appellee under circumstances which made the collision inevitable. It was likewise within the jury’s province to decide whether appellee’s negligence in operating his vehicle without proper lighting or at an excessive speed under conditions then existing proximately caused or contributed to the collision from which he suffered damages.[3]
Appellants’ next point on appeal raises a perplexing and most delicate problem. The issue presented for our decision is whether on the record before us it must be held that the conduct of one of the jurors was such as to require that the verdict and judgment be set aside and a new trial granted.
During the voir dire examination of the jury by counsel for the parties, appellants’ attorney asked the prospective juror, Nin-no, whether any member of his family had ever been involved in an automobile accident, to which inquiry the juror responded in the negative. After the jury was selected, sworn and retired to its room for the purpose of organizing, juror Ninno was named as foreman. After the verdict was rendered, appellants’ attorney served notice of his intention to interview three of the jurors who served on the trial jury pursuant to the provisions of Canon 23 of ethics governing attorneys as it existed on October 11, 1971. A certified copy of a death certificate issued by the Florida Department of Health and Rehabilitative Services was introduced in evidence and established that foreman Ninno’s daughter died from injuries received in an automobile accident which occurred some 2% years prior to the trial of the case sub ju-dice.
It is appellants’ position that the failure of the juror Ninno to disclose matters personal to him in response to questions asked him on his voir dire examination deprived the court and counsel for the appellants of the opportunity to weigh his qualifications as a juror and make a determination as to whether he should be relieved from further service, either for cause or by peremptory challenge. Appellants contend, and we must agree, that since the plaintiff in this case was claiming substantial damages for the injuries sustained by him as a result of the alleged negligent operation of defendants’ motor vehicle, it was of overriding importance to defendants as well as to the court for it to be known whether any juror or member of his immediate family had suffered a similar experience as that alleged by plaintiff. Had the juror Ninno honestly answered the question put to him and admitted that his daughter had died as a result of injuries sustained in an automobile accident, defendants’ counsel would then have had the opportunity of developing by further interrogation whether the death of Ninno’s daughter occurred under circumstances which would disqualify him as a juror for cause or provide a basis for a judgment as to whether he should be challenged peremptorily.
The rule has long been established in this jurisdiction that failure of a juror to honestly answer material questions propounded to him on voir dire examination constitutes bad faith requiring his disqualification from service in the case.[4] The right of counsel to challenge a juror either for cause or peremptorily is indis-pensible to the successful operation of our jury system. When the right to make an intelligent judgment as to whether a particular juror should be challenged is lost or unduly impaired, the right to a fair trial by an impartial jury is destroyed. When this occurs, the verdict should be set aside and a new trial granted.[5] It has further been specifically held that when a prospective *178 juror in a personal injury action fails or refuses to honestly answer questions put to him on voir dire examination regarding whether he or any member of his family has been involved in an automobile accident in the past, a verdict rendered by a jury composed of such a juror has been set aside and a new trial granted.[6]
The prejudice suffered by appellants because of the juror Ninno’s failure to fully and honestly answer the questions propounded to him on his voir dire examination is emphasized by appellants’ second contention which we consider to be extremely material although not necessarily controlling. In the court’s interrogation of the venire prior to voir dire examination by counsel for the parties, the jurors were asked whether any of them had any physical defects which would render them incapable of performing their duties as jurors in the case, to which each venireman responded in the negative. Following rendition of the verdict, three jurors who served in the case were examined by appellants’ counsel as to events which transpired in the jury room during the cour.se of the trial. The testimony of the jurors who were examined established that foreman Ninno let it be known at the outset that he had a deficient heart condition, and because of this the jurors were reluctant to engage in any heated argument or prolonged controversy with him during the course of their deliberations. These jurors testified that at the conclusion of the trial when they retired to consider their verdict five of them were definitely in favor of returning a verdict in favor of the defendants, foreman Ninno being the only one favorable to the plaintiff. Ninno then set about to persuade the other jurors that their initial judgment was wrong and that a verdict should be rendered in favor of plaintiff. It appears that as the deliberations progressed and the argument between Ninno and the other jurors became more intense, Ninno became highly excited and as one juror put it, “He turned a little gray”. It was in deference to Ninno’s physical condition and a reluctance on the part of the other jurors to be the precipitating cause of a recurrence of his heart attacks that they finally yielded their views and agreed with him to render a verdict in favor of plaintiff. The record reveals that despite the fact that appellee was claiming damages in the maximum sum of $131,000.-00, juror Ninno insisted that the amount which the jury should award ought to be a minimum of $250,000.00. It was again on account of the timidity of the remaining members of the jury and their reluctance to cause Ninno to have another heart attack that they again yielded to his insistence and agreed to a verdict of $250,000.00 for plaintiff.
The general rule prevailing in Florida is that affidavits or sworn statements of jurors are admissible to explain or uphold their verdict but not to impeach or overthrow it. This rule is subject, however, to the qualification that the sworn statements of jurors may be received for the purpose of avoiding a verdict in order to show any matters occurring during the trial or in the jury room which does not essentially inhere in the verdict itself.[7] Although the matters of which appellants complain under this point of their brief may be said to be matters inhering in the verdict and therefore not sufficient, if standing alone, to justify setting the verdict aside, they nevertheless point up the prejudicial effect on defendants which resulted from the juror Ninno’s refusal to honestly answer the questions asked of him during his preliminary examination both by the court and by counsel in the cause.
*179 In Florida Publishing Company v. Copeland,[8] the Supreme Court of Florida laid down the proposition that: “‘If the verdict reached does not square with right and justice and there is reasonable ground to conclude that the jury acted through sympathy, passion, prejudice, mistake, or other unlawful cause, it then becomes the province and the duty of the trial court to set the verdict aside and grant a new trial.’ ”
From a careful consideration of the record as a whole, we conclude that the jury finally selected to try the case sub judice was not properly nor lawfully constituted and that the irregularities which occurred in the selection of the jury prejudiced defendants in their opportunity for a fair trial. We are of the view that the ends of justice will best be served by setting aside the verdict rendered in this cause and reversing the judgment appealed herein with directions, upon remand, that a new trial be granted.
SPECTOR, C. J., and JOHNSON, J., concur.

. §§ 317.461 (now 316.217), and 317.872 (now 316.249), F.S.

. Parker v. Hofheinz (Fla.App.1966) 181 So.2d 367; Holland v. Watson (Fla.App.1968) 215 So.2d 498; Knabb v. Tompkins (Fla.App.1971) 254 So.2d 858.

. Wisdom v. Nickels (Fla.App.1968) 212 So.2d 652; Booth v. Mary Carter Paint Company (Fla.App.1966) 182 So.2d 292; Bessett v. Hackett (Fla.1953) 66 So.2d 694.

. Seay v. State, 139 Fla. 433, 190 So. 702.

. Drury v. Franke, 247 Ky. 758, 57 S.W.2d 969 (1933).

. Consolidated Gas & Equipment Co. of America v. Carver (10th Cir. 1958) 257 F.2d 111; Photostat Corporation v. Ball (10th Cir. 1964) 338 F.2d 783.

. Russom v. State (FIa.App.1958) 105 So.2d 380; State v. Ramirez (Fla.1954) 73 So.2d 218; Marks v. State Road Department (Fla.1954) 69 So.2d 771; City of Miami v. Bopp, 117 Fla. 532, 158 So. 89, 97 A.L.R. 1035.

. Florida Publishing Company v. Copeland (Fla.1956) 89 So.2d 18.