433 So.2d 1281 (1983)
TIMES PUBLISHING COMPANY, Steven Marquez, and Nancy Kalwary, Petitioners,
v.
Thomas E. PENICK, Jr., Respondent.
No. 83-532.
District Court of Appeal of Florida, Second District.
June 29, 1983.
*1282 George K. Rahdert of Rahdert, Anderson & Richardson, St. Petersburg, for petitioners.
Jim Smith, Atty. Gen., Tallahassee, and Peggy A. Quince, Asst. Atty. Gen., Tampa, for respondent.
PER CURIAM.
Times Publishing Company and reporters Steven Marquez and Nancy Kalwary petition for review of orders by respondent Judge Thomas E. Penick, Jr. sealing portions of the record in State v. Amazon, cir.ct. no. CRC 81-9622 CFANO B, and directing participants in a postsentencing hearing not to discuss the hearing with anyone.[1] We affirm in part and reverse in part.
Amazon was tried in November 1982. The jury returned its advisory sentencing recommendation of life imprisonment on November 21, 1982, and respondent sentenced Amazon to death on December 8, 1982.
On or about December 22, 1982, the prosecutor submitted a suggestion for judicial inquiry into the possibility of prejudicial information having reached one or more of the Amazon case jurors during the course of the trial, together with a one-sentence motion to seal the suggestion for inquiry pending disposition of the suggestion "in order to preserve the integrity of any information which may become pertinent thereto." These pleadings, an amended motion for new trial submitted by Amazon on or about March 11, 1983, a memorandum regarding the inquiry submitted by the prosecutor on or about March 16, a witness subpoena issued in the Amazon case on or about February 18, 1983, a motion to unseal the record and rescind the gag order in the case submitted by Amazon on or about March 11, 1983, and possibly other pleadings or documents concerning this issue were not filed with the clerk until March 31.
On February 17, 1983, following the issuance of subpoenas, some or all of the Amazon trial jurors appeared in court for inquiry into their possible exposure to prejudicial information during the trial, during which inquiry the group was ordered never to discuss anything that occurred during the proceedings among themselves or with anyone else.
On Friday, February 18, having learned through some of the jurors or members of their families of the inquiry in the Amazon case, petitioner Marquez, a reporter for the St. Petersburg Times, published by petitioner Times Publishing Company, telephoned respondent to ask whether further inquiry proceedings scheduled for the following day would be closed to the press. Respondent replied, "We'll see, if you want to show up in the morning. I don't have anything else to say on it." No formal notice of any kind was given to the press or the public.
*1283 On Saturday, February 19, at 9:30 a.m., the inquiry proceeding reconvened, at which time petitioners Marquez and Kalwary and other news media representatives were present. In the presence of the reporters, both prosecutor Paul A. Meissner and defense attorneys Barry Cohen and Richard Pippinger made brief arguments in favor of closing the hearing to the press. Meissner argued that closure of the proceedings was necessary in order to avoid creating a "chilling effect" on the jurors or making them "any more uncomfortable than they are already" by virtue of the inquiry itself and in order to create "a relaxed atmosphere that is conducive to candor." Pippinger argued that the proceeding was "a very sensitive investigation" and was also "in the nature of a Grand Jury Proceeding." The press was then excluded for further argument by the prosecuting and defense attorneys on the closure issue.
Following exclusion of the press, both Meissner and Pippinger argued that this proceeding was essentially an in camera investigation which could be jeopardized through the loss of witnesses or the tainting of their testimony should the proceedings be made public immediately. Prosecutor C. Marie King noted that two specific witnesses who had been subpoenaed for that day would not be available until the following Monday and that their testimony might be influenced if that day's proceedings were reported in the interim. Cohen agreed and mentioned other witnesses who had not yet been questioned and were not present that day.
Respondent decided to close the proceedings, called the press back in, and announced his ruling as follows:
THE COURT: All right. Press, I've asked you to come in, basically, to explain to you what's going on and what the ruling of the Court is going to be regarding the press at this time.
... .
This proceeding is in the nature of a Grand Jury investigation. We will be interviewing the jurors and the alternate jurors and certain witnesses that have been supboenaed by me, also.
I don't know the scope of all of the facts. We may definitely have to subpoena other witnesses as we proceed here today. I don't know.
... .
We're in the process of investigating this to be sure that both Ira Amazon and the Citizens of the State of Florida received a fair trial. And, in order to conduct this hearing so that we can get to the absolute, God-given truth as to what either did or did not happen, to either substantiate or vitiate the statements that have been called to this Court's attention, I'm going to exclude the press from the hearings in here, in the chambers.
I don't have anything else to say at this time.
Marquez then read the following statement to the court:
I would like to object on behalf of my employer and the public to this proposed closing. Our attorney is prepared to make a number of arguments against closings such as this one, and we respectively [sic] ask the Court for a hearing on those issues.
It is my understanding that the Florida Second Circuit Court of Appeals [sic] has ruled on several recent occasions that the press has standing, and a right to a hearing, in which to argue its position prior to entry of closure orders.
I believe our attorney can be here relatively quickly for the Court's convenience, and he will be able to demonstrate that closure in this case will violate the First Amendment, the Florida Constitution, and recent interpretations of the law expressed by appellate courts. I cannot make the arguments myself, but our attorney can point out several issues for your consideration.
If it please the Court, we respectfully request the opportunity to be heard through counsel prior to the entry of any order closing the court, the court files, or directing any individuals to refrain from *1284 making extrajudicial statements. Thank you.
Respondent simply thanked the reporters, implicitly dismissing them. The press left, whereupon the taking of testimony began.
The witnesses at this second hearing were also requested not to discuss the proceedings with anyone, including the press, and they complied with those instructions when reporters later attempted to question them. Reporters were also denied access to anything in the Amazon case file added after the jury's November 21 sentencing recommendation, including the transcript of the jury inquiry.
The instant petition for review was filed in this court on March 11, and a response was ordered to be and was filed on March 29. On April 4, a supplemental response was filed predicated on two appended orders signed by respondent on March 29. One order ruled on the inquiry issues, finding that no prejudicial information had reached any juror during the trial with the possible exception of the video portion of certain newscasts viewed by one juror, on which issue respondent retained jurisdiction and set further hearing. The other order finding
that the voir dire examination of the jurors and witnesses did not result in explicite [sic] testimony concerning the actual deliberations and actions of the jury thereby invading the traditional sanctity of the jury room and necessitating a continued sealing of the Court File, it is therefore,
ORDERED AND ADJUDGED that those portions of the within Court File which have been previously sealed, together with the transcripts of the said investigatory hearing held by this Court, shall be unsealed and made public.
To our knowledge, respondent's oral gag order prohibiting the inquiry participants from discussing the proceedings with anyone has not been lifted.
We perceive three separate issues to be decided in our review in this case:
(1) Whether respondent erred in failing to accord the press notice and an opportunity to be heard on the issue of closure prior to the closure itself.
(2) Whether respondent erred in ordering closure or in imposing the gag order.
(3) Whether respondent inordinately delayed in subsequently unsealing the closed files and/or whether he erred in failing to lift the orally imposed gag order.[2]
Notice and Opportunity to be Heard. We believe that this issue is controlled by Miami Herald Publishing Co. v. Lewis, 426 So.2d 1 (Fla. 1982), which specifically held: "Notice must be given to at least one representative of the local news media when a motion for closure is filed and when it is heard by the court." Id. at 8.
While Lewis involved closure of a pretrial hearing, as opposed to the posttrial proceedings involved here, we see no reason why a distinction should be made between pretrial and posttrial proceedings. There do not appear to be any exigent circumstances here, and respondent points to none, which could have justified respondent's failure to accord the press an opportunity to be heard prior to closure.
Respondent relies on Sentinel Star Co. v. Edwards, 387 So.2d 367 (Fla. 5th DCA 1980), review denied, 399 So.2d 1145 (Fla. 1981), which, as here, involved a posttrial inquiry into possible jury misconduct, for the proposition that the press was not entitled to notice and hearing in advance of closure. Id. at 372. However, this court held otherwise in Sentinel Star Co. v. Booth, 372 So.2d 100 (Fla. 2d DCA 1979). Moreover, the statement in Edwards that respondent relies on has been superseded by the holding in Lewis. Finally, Edwards states: "There are circumstances, such as those in the present case, where subsequent opportunity to be heard will adequately protect the interests of the press and public." *1285 387 So.2d at 373. Respondent here, however, did not afford any subsequent opportunity to be heard to petitioners, who were obliged to seek review in this court.
Propriety of Closure. The only reason propounded in favor of closure that has merit in our view[3] was the concern regarding the possible loss of witnesses not yet brought before respondent or the possible tainting of such witnesses' testimony by information they might acquire as a result of immediate dissemination of reports of the inquiry proceedings. While the proceedings here were not in the nature of grand jury proceedings, they were investigatory, and the parties and respondent were rightfully concerned about the possible consequences of premature divulgence of reports of the inquiry proceedings. Nevertheless, these concerns did not justify respondent's failure to accord the press notice and a meaningful opportunity to be heard, and we have no developed record on which we can base intelligent review. Therefore, we decline to rule on the propriety of the order or whether the order might have been warranted had such a notice and an opportunity to be heard been given to petitioners.
For the guidance of trial judges, we further conclude that when a closure order is properly entered it must be lifted as soon as the reasons necessitating closure are no longer valid. Here this means that even if the closure order in the case before us had been entered following a properly noticed hearing and had therefore been valid at the time of its entry, the order should have been lifted as soon as the absent witnesses were brought before the court or as soon as respondent determined that no additional witnesses were to be called, whichever first occurred. It does not appear from the incomplete record before us that the closure order was lifted at the earliest point reasonably possible. We hold that in the future a properly entered closure order must be lifted forthwith when the reasons which required its entry are no longer valid.
The Gag Order. The gag order also was issued without a proper hearing. The same reasoning applies to the gag order as to the closure order. A proper hearing not having been held and there presently being no reason for even a properly entered gag order to remain in effect, the gag order must be lifted forthwith if it has not already been lifted.
Accordingly, the cause is remanded to respondent with directions to formally lift his gag order to the participants in the inquiry below if he has not already done so.
BOARDMAN, A.C.J., RYDER and DANAHY, JJ., concur.
NOTES
[1] We have jurisdiction. Florida Rule of Appellate Procedure 9.100.
[2] It should be reiterated, as we mentioned above, that a motion specifically requesting respondent to rescind the gag order, as well as unseal the record, was submitted to respondent (by Amazon's attorneys) on March 11, 1983.
[3] Here, as in Sentinel Star Co. v. Edwards, 387 So.2d 367 (Fla. 5th DCA 1980), review denied, 399 So.2d 1145 (Fla. 1981), no jury deliberations were threatened with revelation at the investigative hearings, so preservation of the sanctity of jury deliberations was not a valid justification for closure.