444 So.2d 922 (1983)
Terry Melvin SIMS, Appellant,
v.
STATE of Florida, Appellee.
No. 57510.
Supreme Court of Florida.
November 3, 1983.
Rehearing Denied January 19, 1984.
*923 Richard L. Jorandby, Public Defender and Craig S. Barnard, Chief Asst. Public Defender, Fifteenth Judicial Circuit, West Palm Beach, for appellant.
Jim Smith, Atty. Gen., and James Dickson Crock, Mark C. Menser and Richard B. Martell, Asst. Attys. Gen., Daytona Beach, for appellee.
BOYD, J.
This case is an appeal from judgments of conviction for first-degree murder and robbery and a sentence of death. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const.
Terry Melvin Sims was convicted for the first-degree murder of George Pfeil, an off-duty deputy sheriff who entered a pharmacy while it was being robbed by Sims and three other men. Two of these other participants, Curtis Baldree and B.B. Halsell, were the state's chief witnesses. They testified that Sims and Baldree armed themselves with pistols and entered the pharmacy, while Halsell and the fourth participant, Gene Robinson, waited in a car a short distance away. Baldree said that he went to the back of the store to rob the pharmacist while Sims stayed at the front of the store watching the door. Sims ordered the customers and employees to the back of the store and into the bathroom. When Pfeil came into the store he and Sims exchanged gunfire. Pfeil was shot twice and Sims was wounded in the hip. Sims and Baldree escaped the scene and later joined their accomplices. The four men then departed the area.
This account of the robbery and the shooting was confirmed by pharmacist Robert Duncan, Duncan's wife and daughter both of whom worked at the store, and two customers who identified appellant. One of the customers, William Guggenheim, testified that he tried to leave the store when he saw a man pointing a gun at the pharmacist. He was stopped by Sims who took his wallet. Guggenheim said he then saw Sims shoot a man who was entering through the front door.
*924 The main theory of defense was mistaken identity. The defense attempted to discredit Baldree and Halsell on the basis of their bad character, drug addiction, criminal records, and the plea arrangements between them and the state. The defense attacked the identification testimony of one of the customers as the product of a suggestive photographic line-up and questioned the testimony of Guggenheim on the basis of his earlier failure to choose appellant from a photographic line-up. The defense then presented evidence of appellant's resemblance to another individual said to be a frequent criminal associate of Baldree and Halsell.
The jury returned verdicts of guilty of first-degree murder and robbery. At the sentencing phase, the state presented a certified copy of a 1971 Orange County conviction for assault with intent to rob. The defense presented witnesses who testified to appellant's good character and difficult background circumstances. The jury recommended death. Finding several aggravating circumstances and no mitigating circumstances, the trial judge adopted this recommendation.
Appellant's first point on appeal is that he was denied his sixth amendment right to cross-examine a witness when the trial court curtailed defense counsel's cross-examination of Baldree. He relies on Coxwell v. State, 361 So.2d 148 (Fla. 1978). The asserted error occurred when defense counsel began questioning Baldree about the individual whom appellant was said to resemble. We do not find that the court's ruling was a curtailment of cross-examination requiring reversal under Coxwell v. State. Here the defense was allowed extensive cross-examination of the witness and the state's objection and the court's ruling thereon came only after the defense went into matters beyond the scope of Baldree's direct testimony. The defense did not ask for an opportunity to make a proffer to show the relevance of the information it was seeking to bring out. We find no error in the judge's ruling.
Next appellant argues that the trial judge should have granted his motion for mistrial when a witness mentioned using appellant's "mug shot" in a photographic display. Since these words were used by a defense witness and did not specifically refer to a prior conviction, we find that this vague reference to other possible criminal activity was not so prejudicial as to require a new trial. See Straight v. State, 397 So.2d 903 (Fla.), cert. denied, 454 U.S. 1022, 102 S.Ct. 556, 70 L.Ed.2d 418 (1981).
Appellant also claims the trial judge erred in excluding from evidence documents corroborative of a defense witness's testimony. Since the documents were superfluous to the witness's testimony and were not relevant to a material issue of fact, we find this point to be without merit.
Next appellant argues that the prosecutor made several improper comments during his closing argument. Since appellant failed to object at the trial, he has failed to preserve this point for appeal. State v. Cumbie, 380 So.2d 1031 (Fla. 1980); Clark v. State, 363 So.2d 331 (Fla. 1978).
Appellant's fifth point on appeal is that the trial judge erred by not granting his request for an evidentiary hearing on whether the exclusion of potential jurors unalterably opposed to the death penalty results in a jury predisposed toward conviction. We have held that a defendant is not entitled to have jurors serve on his jury who are unalterably opposed to the death penalty and that a trial judge may excuse such jurors for cause. Maggard v. State, 399 So.2d 973 (Fla.), cert. denied, 454 U.S. 1059, 102 S.Ct. 610, 70 L.Ed.2d 598 (1981); Riley v. State, 366 So.2d 19 (Fla. 1978). Since we have previously determined as a matter of law that there is no constitutional infirmity with excluding jurors who because of personal beliefs could not render a verdict of guilty in a capital felony case, the trial judge did not abuse his discretion in denying the request for an evidentiary hearing.
Next appellant complains that he was prevented from further questioning a *925 juror in a post-trial hearing about whether the jurors had considered appellant's not testifying in reaching their verdict. The general rule in Florida is that a juror's testimony is relevant only if it concerns matters which do not essentially inhere in the verdict itself. Russ v. State, 95 So.2d 594 (Fla. 1957); Parker v. State, 336 So.2d 426 (Fla. 1st DCA), appeal dismissed, 341 So.2d 292 (Fla. 1976). A jury's consideration of a defendant's failure to testify is not the same as considering evidence outside the record, but is rather an example of its misunderstanding or not following the instructions of the court. Such misunderstanding is a matter which essentially inheres in the verdict itself. Russ v. State; Parker v. State. We find from the record that the jury was properly instructed that the state has the burden of proving the defendant's guilt and that the defendant is not required to respond. Therefore the court did not err in refusing to allow further questioning of the juror.
Appellant's final argument concerning the guilt phase of the trial is that the trial judge erred in allowing the jury to return verdicts on multiple and inconsistent counts. In one count appellant was charged with premeditated murder or felony-murder of Pfeil based upon the robbery of Duncan. In a second count he was charged with premeditated murder or felony-murder of Pfeil based on the robbery of Guggenheim. Appellant filed a motion to require the state to elect one or the other count on the ground that since there was only one killing he could be found guilty at the very most of only one murder. The trial court denied the motion, finding there was no necessary inconsistency between the two verdicts. We agree with this ruling. See Reed v. State, 94 Fla. 32, 113 So. 630 (1927). In essence, the crime of murder was charged by alternative counts of the indictment. The court in effect consolidated the two verdicts by entering judgment of conviction for a single offense of first-degree murder. No prejudice arose from the denial of the motion to elect.
We now consider whether the trial judge properly imposed a sentence of death. As was stated above, the jury recommended the capital sentence. As aggravating circumstances, the trial judge found that appellant had previously been convicted of a felony involving the use or threat of violence, citing a previous conviction for assault with intent to rob and a previous conviction for robbery, section 921.141(5)(b), Florida Statutes (1977); that appellant created a great risk of death to many persons, section 921.141(5)(c); that the capital felony was committed in the course of or in the attempt to commit or in flight after committing a robbery, section 921.141(5)(d); that the murder of the uniformed deputy sheriff was committed for the purpose of avoiding arrest, section 921.141(5)(e); that the murder was motivated by pecuniary gain, section 921.141(5)(f); that the murder was committed to disrupt or hinder the enforcement of the law, section 921.141(5)(g); and that the murder was especially heinous, atrocious, or cruel, section 921.141(5)(h). Finding no statutory mitigating circumstances, the trial judge found that the aggravating circumstances outweighed any mitigating considerations.
Appellant points out several errors in the judge's findings. One is that the judge should not have given separate consideration to circumstances (d), commission during a robbery, and (f), commission for pecuniary gain. Provence v. State, 337 So.2d 783 (Fla. 1976), cert. denied, 431 U.S. 969, 97 S.Ct. 2929, 53 L.Ed.2d 1065 (1977). Nor should the judge have considered as separate aggravating circumstances (e), avoiding arrest, and (g), hindering law enforcement. Clark v. State, 379 So.2d 97 (Fla. 1979), cert. denied, 450 U.S. 936, 101 S.Ct. 1402, 67 L.Ed.2d 371 (1981). The judge also erred in finding that this murder was especially heinous, atrocious, or cruel. E.g., Maggard v. State; Lewis v. State, 377 So.2d 640 (Fla. 1979); Cooper v. State, 336 So.2d 1133 (Fla. 1976), cert. denied, 431 U.S. 925, 97 S.Ct. 2200, 53 L.Ed.2d 239 (1977).
*926 Since there were no mitigating circumstances, the two instances of improper double consideration of or giving separate effect to similar statutory aggravating circumstances may be regarded as harmless error. We will simply consolidate the separate statutory factors so as to accord them their proper weight. The double recitation of proven factors does not call the propriety of the sentence into question unless it interferes with the mandated process of weighing the circumstances. Hargrave v. State, 366 So.2d 1 (Fla. 1978), cert. denied, 444 U.S. 919, 100 S.Ct. 239, 62 L.Ed.2d 176 (1979). Similarly, the erroneous finding that the murder was heinous, atrocious, or cruel may be considered harmless error. Armstrong v. State, 399 So.2d 953 (Fla. 1981).
Despite these errors, therefore, we find that death is still the appropriate penalty. It was properly determined that the capital felony was committed in the course of a robbery, that it was committed for the purpose of avoiding arrest, and that appellant had previously been convicted of life-threatening crimes. Where there are some aggravating and no mitigating circumstances, death is presumed to be the appropriate punishment. State v. Dixon, 283 So.2d 1 (Fla. 1973), cert. denied, 416 U.S. 943, 94 S.Ct. 1950, 40 L.Ed.2d 295 (1974). Therefore, despite the judge's erroneous consideration of some of the aggravating circumstances, there remain several other aggravating circumstances properly found which support the sentence of death.
The judgments of conviction and the sentence of death are affirmed.
It is so ordered.
ALDERMAN, C.J., and ADKINS, BOYD, OVERTON, McDONALD and EHRLICH, JJ., concur.