615 So.2d 768 (1993)
SENTINEL COMMUNICATIONS COMPANY, et al., Petitioners,
v.
Hon. John W. WATSON, III, Circuit Court Judge, Etc., Respondent.
No. 93-80.
District Court of Appeal of Florida, Fifth District.
March 5, 1993.
*769 Jonathan D. Kaney, Jr., of Cobb, Cole & Bell, Daytona Beach, for petitioners News Journal Corp. and Robert Nolin.
David L. Evans, of Mateer, Harbert & Bates, P.A., Orlando, for petitioners Sentinel Communications Co. and H & C Communications, Inc., d/b/a/ WESH-TV Broadcasting Co.
Stephen D. Milbrath of Allen, Dyer, Doppelt, Franjola & Milbrath, Orlando, for petitioner DorrieJean Muller.
Robert A. Butterworth, Atty. Gen., and Louis F. Hubener, Asst. Atty. Gen., Tallahassee, for respondent John W. Watson.
HARRIS, Judge.
The issue before us, as it was before the trial court, is how best to reconcile the competing interest between the defendant's right to a fair trial and the public's right of access to judicial records and proceedings. But unlike the trial judge who was compelled to decide the issue during the heat of the battle (while the evidence was being developed and the jurors interviewed), our review is conducted after the interviews have been completed and nothing remains to be done on the motion for new trial but to rule on it. We, of course, are not concerned with that issue. While we commend the trial judge for his conscientious efforts, we nevertheless conclude that at least some of the records and proceedings which he sealed or closed were and are subject to public access.
The issue of public access arose post-trial but pre-sentencing in the trial of Virginia Gail Larzelere for first degree murder. After the penalty phase of the trial was concluded and the jury was discharged, the defense raised charges of jury misconduct. Central to these charges are tape recordings of an interview given by juror Kelley in which she accuses her fellow jurors of misconduct during the trial proceedings. This interview was given to, and the tapes taken from, DorrieJean Muller, a local resident who was engaged in writing a book about the criminal proceedings.
In response to the motion filed by the defense, the trial court held hearings, heard testimony, obtained the tapes and issued an order restraining Muller from publishing information regarding the tape. A hearing was held on August 17, 1992 in open court at which time some media representatives may have been in attendance. Subsequently, for the convenience of counsel who live in different cities, telephone conferences were conducted on the motion to interview jurors.
The court granted the motion for juror interview, but held that it would be in camera to avoid harassment or discomfort to the jurors and to promote openness. The parties and their agents were directed not to notify the press. Prior to the scheduled juror interview, juror Kelley was directed not to contact any of the other jurors and not to discuss her forthcoming interview with anyone.
On November 17, 1992, when juror Kelley was to undergo further questioning, the press learned of the proceedings and requested access. When the State, the defense *770 and the juror requested that the hearing be closed, the court did so, but promised a later hearing on the closure issue. On December 3, 1992 a hearing on the closure issue was held. At the conclusion of the hearing, the court announced that the hearings would remain closed based on his paramount concern for the rights of the defendant in a capital case, to insure candor from the jurors yet to be questioned and to minimize the intrusion into the lives of the jurors. The juror interviews have now been completed.
Following the conclusion of the jury interviews, the defense made a motion for new trial based on the results of those interviews. That motion remains pending.
The court, by order, sealed the transcript of the juror interviews, the transcript of the hearing involving Muller, transcripts of the various hearings (with some exemptions) relating to the misconduct charges and directed that the court reporter notes not be transcribed (again with some exceptions). The court also ordered all State and defense agents, clerks and bailiffs to maintain confidentiality and Muller and Gary McDaniel (a private investigator) were forbidden from disclosing, directly or indirectly, any juror statements. Finally, the media was prohibited from interviewing any juror.
The court reaffirmed its previous finding that less restrictive measures would cause substantial likelihood of prejudice to the State and defendant and result in a serious and imminent threat to the orderly and effective administration of justice. The court indicated that its order was temporary and would be lifted when the likelihood of prejudice to the parties and the fair administration of justice had ended.
This petition concerns the appropriateness of the various orders sealing records, closing hearings and restricting discussions and interviews.
Our analysis must begin with the proposition that all civil and criminal court proceedings are public events, records of court proceedings are public records and there is a strong presumption in favor of public access to such matters. Barron v. Florida Freedom Newspapers, Inc., 531 So.2d 113 (Fla. 1988). Public trials are essential to the judicial system's credibility in a free society. Id. at 116.
This proposition, however, is balanced by the counter-proposition that courts have the inherent power to preserve order and decorum in the courtroom and the responsibility to protect the rights of the parties and witnesses and to further the administration of justice. Miami Herald Publishing Co. v. Lewis, 426 So.2d 1 (Fla. 1982).
The prevailing test in Florida to be applied to closure orders in criminal proceedings was articulated in Lewis. The closure must be necessary to prevent a serious and imminent threat to the administration of justice, no alternatives but closure, other than change of venue, would protect a defendant's right to a fair trial, and closure would be effective in protecting the rights of the accused without being broader than necessary to accomplish the purpose. See also Bundy v. State, 455 So.2d 330 (Fla. 1984).
Two Florida cases consider closure of juror inquiry proceedings. In Times Publishing Co. v. Penick, 433 So.2d 1281 (Fla. 2d DCA 1983), after sentencing, the prosecutor submitted a suggestion of juror inquiry regarding possible improprieties. A motion to seal was also submitted. The jurors were questioned pursuant to the motion and then advised not to discuss their testimony. Subsequently, the media discovered the ongoing investigation and requested access. A hearing was held at which time both the State and defendant requested closure to avoid the chilling effect of the press and to insure jurors were comfortable. The argument was made that the proceedings were similar to and in the nature of grand jury proceedings which are secret. The trial court ordered the juror interviews to take place in camera, excluding the press, finding that the ongoing investigation would be jeopardized by the loss or taint of further juror testimony. The court also closed the file and transcript.
*771 The Second District held in Penick that under Lewis, notice must be given to at least one representative of the news media when closure is requested and when the issue is heard, although acknowledging that exigent circumstances may affect the form of the notice or hearing. In addition, the court held that the media must have an opportunity to be heard. The court in Penick found that the only reason for closure of the jury inquiry given by the court which had any merit was the possible loss or tainting of other witnesses by the publication of the proceedings. The Second District acknowledged the justification of the court's concern about the possible consequences of premature disclosure, but held that those concerns did not justify the failure to accord the press notice and an opportunity to be heard. The court also determined that the record did not contain sufficient information to determine whether closure was justified. Finally, the court held that even if properly entered, a closure order must be lifted as soon as the reasons for its entry no longer are valid, or as in Penick, as soon as all the witnesses had been heard. The failure to lift the closure order at the earliest possible point was held to be error, as was the gag order entered without a prior hearing, and the court found that there was no reason to continue either once the juror testimony was secured. That is, of course, the posture in which we find ourselves. The juror interviews are completed and there is no longer any reason to keep the transcripts sealed. The trial court in this case might well have already lifted some restrictions from his orders but for the fact that jurisdiction now lies with this court.
In Sentinel Star Co. v. Edwards, 387 So.2d 367 (Fla. 5th DCA 1980), rev. denied, 399 So.2d 1145 (Fla. 1981), this court considered an order closing post-trial hearings regarding juror interviews in civil proceedings. The trial court in Edwards sua sponte closed the proceeding during consideration of the motion to interview. A media attorney requested access, but the court denied the request, sealed the court reporter's notes, ordered the parties and witnesses not to discuss the proceeding and prohibited any further juror interviews by the media. On appeal, this court held that the trial court had inherent power to control the conduct of proceedings before it, including the right to close the juror interviews. The court noted that the rule limiting juror interviews is founded on the sound policy of preventing litigants or the public from invading the privacy of the jury room and that it was within the trial court's inherent discretion to control the manner in which juror interviews are conducted. See also The Florida Bar v. Newhouse, 498 So.2d 935 (Fla. 1986) (public policy of this state has long been to hold jury deliberations and verdicts inviolate).
Again, as in Penick, this court agreed that faced with a motion for juror interview and a suggestion of possible juror misconduct, the trial court was understandably apprehensive and protective of the traditional sanctity of the jury room. However, this court held that under the circumstances of the case where the verdict had been rendered, no jury deliberations were threatened since the matter raised was totally extrinsic to the jury deliberations, and the issue had already been partially revealed in the affidavit filed in support of the motion to interview, the trial court's concerns were unjustified. The court quoted Marks v. State Road Department, 69 So.2d 771 (Fla. 1954) where it was held that:
[P]ublic policy protects a juror in the legitimate discharge of his duty and sanctifies the result attained thereby; but if he steps aside from his duty, and does an unlawful act, he is a competent witness to prove such fact, and thereby prevent the sanction of the law from attaching to that which would otherwise be colorably lawful... .
* * * * * *
[T]o hear such proof would have a tendency to diminish such practices and to purify the jury room, by rendering such improprieties capable and probable of exposure and consequently deterring jurors from resorting to them.
Id. at 775. Accordingly, the court in Edwards held that the protection of the sanctity of the jury room did not support closure *772 of the jury interview in that case. The action was remanded to the trial court for a determination if other grounds for closure existed, and if not, the press was to be allowed access to the proceedings or the transcripts thereof.
A review of the transcripts in this case reveals that much of juror Kelley's testimony actually inheres in the verdict and should remain secret. We are constrained from indicating with particularity which portion of her testimony so inheres because to do so would itself invade the privacy of the jury room. We can state, however, that revelations as to how a certain group of jurors or an individual juror voted on the death penalty or on any other matter inheres in the jury verdict and should not be revealed. We can likewise state that allegations of juror misconduct such as reading newspapers contrary to court orders or lying about knowledge of an incident in the parking lot in which jury threats might have been made do not inhere in the verdict.
In Russ v. State, 95 So.2d 594 (Fla. 1957) the supreme court elaborated on what matters inhere in a verdict, quoting from Wright v. Illinois & Mississippi Telegraph Co., 20 Iowa 195 (1866):
That affidavits of jurors may be received for the purpose of avoiding a verdict, to show any matter occurring during the trial or in the jury room, which does not essentially inhere in the verdict itself, as that a juror was improperly approached by a party, his agent, or attorney; that witnesses or others conversed as to the facts or merits of the cause, out of court and in the presence of jurors; that the verdict was determined by aggregation and average or by lot, game or chance or other artifice or improper manner; but that such affidavit to avoid the verdict may not be received to show any matter which does essentially inhere in the verdict itself, as that the juror did not assent to the verdict; that he misunderstood the instructions of the court; the statements of the witnesses or the pleadings in the case; that he was unduly influenced by the statements or otherwise of his fellow-jurors, or mistaken in his calculations or judgment, or other matter resting alone in the juror's breast.
See also McAllister Hotel, Inc. v. Porte, 123 So.2d 339, 344 (Fla. 1959) (overt prejudicial acts are subject to juror inquiry but subjective impressions and opinions are not). In Sconyers v. State, 513 So.2d 1113 (Fla. 2d DCA 1987), the court quoted Russ, but gave a simplified definition of matters which inhere in the verdict, stating that such matters are "those which arise during the deliberation process."
The following are examples of cases involving matters which were held to inhere in the verdict. Johnson v. State, 593 So.2d 206 (Fla. 1992) (question of jury polling during deliberations and jury's understanding of instructions); Baptist Hospital of Miami, Inc. v. Maler, 579 So.2d 97 (Fla. 1991) (opinions of jurors as to why reached verdict); Mitchell v. State, 527 So.2d 179 (Fla. 1988) (juror felt pressured); Sims v. State, 444 So.2d 922 (Fla. 1983) (consideration of defendant's failure to testify is misunderstanding of instructions); Travelers Insurance Co. v. Jackson, 610 So.2d 680 (Fla. 5th DCA 1992) (defense attorney mouthed liar toward jury during plaintiff's testimony); Rabun and Partners, Inc. v. Ashoka Enterprises, Inc., 604 So.2d 1284 (Fla. 5th DCA 1992) (juror said verdict rendered against doctor because he was rich; involves inquiry into emotions and mental processes); Orange County v. Piper, 585 So.2d 1182 (Fla. 5th DCA 1991) (proffered matters merely opinion of jurors as to reason verdict rendered; no evidence of improper agreement); Phares v. Froehlich, 582 So.2d 683 (Fla. 2d DCA 1991) (impressions of jurors as to why reached verdict); Robinson v. MacKenzie, 508 So.2d 1285 (Fla. 3d DCA), rev. denied, 518 So.2d 1276 (Fla. 1987) (verdict based on misapprehension of law); Powell v. State, 414 So.2d 1095 (Fla. 5th DCA 1982) (juror said she didn't mean to convict but felt intimidated and hurried).
Concerning the court's order prohibiting discussion of the proceedings, prior restraint comes to the court with a heavy burden in the form of a presumption against its constitutional validity. State ex *773 rel. Miami Herald Publishing Co. v. McIntosh, 340 So.2d 904 (Fla. 1976). Prior restraint where the press can gather information but not publish it, and limitations on access to information, which is also a form of censorship, suffer the same ill. However, prohibiting parties, attorneys and court staff from commenting on matters before the court is an acceptable alternative. See e.g. Branzburg v. Hayes, 408 U.S. 665, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972) (First Amendment does not guarantee press constitutional right of special access to information not available to the public); Zemel v. Rusk, 381 U.S. 1, 17, 85 S.Ct. 1271, 1281, 14 L.Ed.2d 179 (1965) (right to speak and publish does not carry unrestrained right to gather information). In Florida Freedom Newspapers, Inc. v. McCrary, 520 So.2d 32 (Fla. 1988) the Florida Supreme Court held that "There is no constitutional impediment to a court prohibiting prosecutors, defense counsel, witnesses and other interested parties from making prejudicial pretrial comments which are intended for publication." See also State ex rel. Miami Herald Publishing Co. v. McIntosh, 340 So.2d 904 (Fla. 1976) (limits on lawyers, litigants and court personnel made at court's discretion to assure fair trial are permissible, so long as limits on comments of others are restricted to areas where clear and present danger of miscarriage of justice exists).
The trial judge emphasized that where a defendant's right to a fair trial and the public's right of access conflict, the right to access must yield. See Florida Freedom Newspapers, Inc. v. McCrary, 520 So.2d 32 (Fla. 1988); Palm Beach Newspapers, Inc. v. Burk, 504 So.2d 378, 380 (Fla. 1987). See also Estes v. Texas, 381 U.S. 532, 85 S.Ct. 1628, 14 L.Ed.2d 543 (1965) (right to a fair trial is most fundamental of all freedoms and must be preserved at all costs). The court also notes that in Gannett Co., Inc. v. DePasquale, 443 U.S. 368, 378, 99 S.Ct. 2898, 2904, 61 L.Ed.2d 608 (1979) the Court held that to safeguard the due process rights of the accused, a trial judge may take protective measures even when not strictly and inescapably necessary.
But the trial is over. The issue now is whether certain members of the jury acted improperly in matters not inhering in the verdict. Here, sunlight can be beneficial. In Sentinel Star v. Edwards, this court discussed the beneficial effect publicity could have to deter misconduct of future jurors. In Sheppard v. Maxwell, 384 U.S. 333, 350, 86 S.Ct. 1507, 1515, 16 L.Ed.2d 600 (1966) the court noted that a responsible press has always been regarded as the "handmaiden of effective judicial administration", particularly in criminal proceedings. See also News-Press Publishing Co., Inc. v. State, 345 So.2d 865, 867 (Fla. 2d DCA 1977). Public access to judicial proceedings improves the quality of testimony, since witnesses will be disinclined to falsify public testimony, and it also keeps court officers conscientious. See Miami Herald Publishing Co. v. Lewis, 426 So.2d 1 (Fla. 1982).
We find, therefore, that although the trial court has the inherent authority to close juror interviews which involve questions which inhere in the verdict or jury deliberations, it is clear that the inquiry in this case also involved extrinsic matters. Further, the record fails to establish that total closure was and continues to be necessary either to protect the defendant's right to a fair trial or to protect the sanctity of the jury. A serious and imminent threat to the administration of justice was not established by competent evidence.
We order that the court review the transcripts and redact those portions inhering in the jury verdict and then release the remaining juror transcripts to the media. Further, although ordering the parties, counsel, jurors and court personnel not to comment during the trial was within the court's inherent authority, continuing that order after the trial proceedings were ended and ordering the media and others not to interview (or attempt to interview) jurors is no longer justified. Accordingly, the trial court's orders prohibiting such comments and interviews are hereby quashed, and the court files and redacted transcripts shall be open to public scrutiny, except that the Muller tapes (or transcripts of the tapes) will remain sealed until further *774 proceedings can determine whether she has copyright or property rights in such tapes that might otherwise entitle them to protection against disclosure.
REVERSED and REMANDED for further proceedings consistent with this opinion.
PETERSON and DIAMANTIS, JJ., concur.